UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

John Otto Randle,

              Plaintiff,

   vs.

                         REPORT AND RECOMMENDATION

The City of Minneapolis Police
Department, The 3rd Precinct &
its Officers; Officer Mike Nimlos;
Officer Jeffrey J. Imming; Officer
Michael K. Kaneko; Officer Blayne
L. Lehner; Officer Justin J. Merten;
Officer Kelly J. O'Rourk; Officer
Clay T. Pecore; and Officer Richard
K. Thomas,

             Defendants.         Civ. No. 06-859 (PAM/RLE)

* * * * * * * * * * * * * * * * * * *

## I. Introduction

This matter came before the undersigned United States Magistrate Judge

pursuant to a general assignment, made in accordance with the provisions of Title 28

U.S.C. §636(b)(1)(B), upon the Motion of the Defendants to Dismiss or, in the

alternative, for Summary Judgment.  For these purposes the Plaintiff appears pro se,

and the Defendants appear by Charles J. Brown, Jr., Assistant Minneapolis City

Attorney.  For reasons which follow, we recommend that the Defendants' Motion to Dismiss or, alternatively for Summary Judgment, be granted.

## II.  Factual and Procedural History

The Plaintiff, who is a Minnesota State prisoner at the Minnesota Correctional Facility, in Lino Lakes, Minnesota ("MCF-Lino Lakes"), commenced this action under Title 28 U.S.C. §1983, alleging violations of his First, Fourth, Fifth, Sixth, and Fourteenth Amendment rights.  See, Amended Complaint, Docket No. 7, at ¶2. Specifically, the Plaintiff alleges that, on March 16, 2005, the Defendants Mike Nimlos ("Nimlos"), Jeffery J. Imming, Michael M. Kaneko, Blayne L. Lehner, Justin J. Merten, Kelly J. O'Rourk, Clay T. Pecore, and Richard K. Thomas (collectively, "individual Defendants"),[1] who are law enforcement officers with the City of

---

[1]In his Amended Complaint, the Plaintiff did not specify if he brought his claims against the individual Defendants, in their personal as well as their official capacities.  In the context of a Section 1983 claim, specific pleading of individual capacity claims is required because public officials must be put on notice that they will be exposed to personal liability.  See, Andrus v. Arkansas, 197 F.3d 953, 955 (8th Cir. 1999).  Where a plaintiff has failed to state whether he is suing an official in his individual capacity, our Court of Appeals has construed the claim to be against the official in his official capacity only.  See, Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999); Egerdahl v. Hibbing Community College, 72 F.3d 615, 620 (8th Cir. 1995)("If a plaintiff's complaint is silent about the capacity in which she is suing the defendant, we interpret the complaint as including only official capacity claims."); Miskovich v. Indep. Sch. Dist. 318, 226 F. Supp. 2d 990, 1013 (D. Minn. 2002).  Thus, for the purposes of the Defendants' Motion, we conclude that the

Minneapolis Police Department ("City of Minneapolis"), conducted an illegal search of his apartment, which was the downstairs unit of a duplex, without a valid Warrant. Id. at ¶1.

The Plaintiff further alleges that the individual Defendants improperly used an "explosive device" to gain access to his apartment, which caused damage to his television, personal computer, software, and stereo equipment, id. at ¶¶3, 8, and that, during the course of the search, the Defendants damaged or broke three (3) digital telephones, a modem, "glass wall pictures," records, tapes, videos, CDs, and furniture, id. at ¶9, stole $700.00 from him by failing to properly inventory cash that was uncovered during the search, id. at ¶¶2-3, and failed to properly secure his apartment after the search was completed. Id. at ¶¶12-15. The Plaintiff asserts that, following the search, he contacted the City of Minneapolis, and asked to see a copy of the Search Warrant, and the Affidavit which supported the Warrant, but that, as of the date that he filed his Amended Complaint, he had not seen the requested documents. Id. at ¶23.

Lastly, the Plaintiff contends that the City of Minneapolis has a policy, custom or tradition, which encourages officers to make "'Warrantless Searches' called Drug

---

Plaintiff has sued the individual Defendants solely in their respective official capacities.

Raids and while conducting these so called Raids [the] officers are pocketing the money they find in these so called Raids and setting up their own drug deals." Id. at ¶¶ 23-32. As a result of the alleged violations of his Constitutional rights, the Plaintiff claims that he has written to the Minneapolis Civilian Review Authority, which is conducting two (2) separate investigations into alleged corruption within the Minneapolis Police Department. Id. at ¶24. The Plaintiff asks for damages in the amount of $500,000.00, and Court costs. Id. at ¶35.

As noted, the Defendants have moved to dismiss, or alternatively, for Summary Judgment. See, Docket No. 36. In support of their Motion, the Defendants have submitted as Exhibits: (1) an application for a Search Warrant and a supporting Affidavit, and a Search Warrant, which was issued on March 11, 2005, for the search of the lower unit of a duplex apartment building that was the Plaintiff's residence, as well as the Inventory Receipt for a search based on that Warrant, which occurred on March 16, 2005; and (2) an application for a Search Warrant and a supporting Affidavit, and a Search Warrant, which was issued on March 11, 2005, for the search of the upper unit of the same duplex apartment building, and an Inventory Receipt for

a search which was based on that Warrant, and which occurred on March 17, 2005. See, <u>Affidavit of Charles J. Brown, Jr.</u>, <u>Docket No. 38</u>, at Exhibits A-B.[2]

A Judge with the Fourth Judicial District Court for the State of Minnesota, reviewed and signed both Search Warrants. <u>Id.</u> at Exhibit A, p. 5; Exhibit B, p. 4. The inventory list associated with the first Search Warrant shows that the police took into custody a small amount of suspected controlled substances, a quantity of coins, drug paraphernalia, and United States currency, in sums of $1,100.00, and $85.00. <u>Id.</u> at Exhibit A, p. 6. The inventory list for the second Search Warrant states that the police seized suspected controlled substances, a weapon and ammunition, and United States currency in sums of $19.00, and $4.00. <u>Id.</u> at Exhibit B, p. 5.

The Defendants maintain that the Plaintiff has failed to state a cause of action under Title 42 U.S.C. §1983, because he has failed to establish a constitutional violation. In the alternative, the Defendants argue that, even if the Plaintiff has stated a claim, his Amended Complaint must still be dismissed because the Plaintiff has

---

[2]The Warrant that was executed on March 16, 2005, was for the Plaintiff's apartment, which was the lower unit of the duplex. See, <u>Affidavit of Charles J. Brown, Jr.</u>, <u>Docket no. 38</u>, Exhibit 1, page 1-4. However, the Inventory Receipt states that it is based on a search that took place in the upper unit of the duplex. <u>Id.</u> at page 5. Neither party has commented on the disparity between the Warrant, and the Inventory Receipt but, nonetheless, we address this in our discussion of the Plaintiff's Fourth Amendment claims.

failed to establish proof as to the requisite elements of that claim.  The Defendants also argue that there is no evidence, in the Record, to support a conclusion that the City has a policy, custom or tradition, which encourages its officers to violate the rights of individuals during searches.  Finally, three (3) of the individual Defendants assert that they have not been properly served, and should be dismissed from this matter.  The Plaintiff has not submitted a responsive memorandum.

## III.  Discussion

A.    The Motion of the Defendants to Dismiss, or for Summary Judgment.

A.    Standard of Review.  "When reviewing a Rule 12(b)(6) dismissal for failure to state a claim, we look only to the facts alleged in the complaint and construe those facts in the light most favorable to the [nonmoving party]."  Riley v. St. Louis County, 153 F.3d 627, 629 (8th Cir. 1998), cert. denied, 525 U.S. 1178 (1999), citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.23d 554, 556 (8th Cir. 1998); see also, Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004).  In addition, all reasonable inferences, from the facts alleged in the Complaint, must be drawn in favor of the nonmoving party.  Maki v. Allete, Inc., supra at 742.  "A complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief."  Young v. City of St. Charles, 244 F.3d 623, 627 (8th

Cir. 2001), citing <u>Breedlove v. Earthgrains Baking</u>, 140 F.3d 797, 799 (8th Cir. 1998); see also, <u>Maki v. Allete</u>, supra at 742; <u>Helleloid v. Independent School Dist. No. 361</u>, 149 F. Supp.2d 863, 866-67 (D. Minn. 2001).

"Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." <u>Young v. City of St. Charles</u>, supra at 627, citing <u>Neitzke v. Williams</u>, 490 U.S. 319, 326-27 (1989). "To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions." <u>Id.</u>, citing <u>Springdale Educ. Ass'n v. Springdale Sch. Dist.</u>, 133 F.3d 649, 651 (8th Cir. 1998).

A Motion to Dismiss can be converted to a Rule 56 Motion for Summary Judgment if "matters outside the pleadings are presented to and not excluded by the court." <u>Rule 12(b), Federal Rules of Civil Procedure</u>. However, a Court may consider some information, which is not contained within the Complaint -- such as materials that are part of the public record, and materials that are necessarily embraced by the pleadings -- without transforming the Motion into one for Summary Judgment. See, <u>Porous Media Corp. v. Pall Corp.</u>, 186 F.3d 1077, 1079 (8th Cir. 1999); see, <u>Enervations, Inc. v. Minnesota Mining and Manufacturing Co.</u>, 380 F.3d 1066, 1069 (8th Cir. 2004); <u>Stahl v. United States Department of Agriculture</u>, 327 F.3d 697, 700

(8th Cir. 2003).  Since we have reviewed the materials submitted by Affidavit, the Defendants' Motion under Rule 12(b)(6), has been converted into a Motion for Summary Judgment, under Rule 56, Federal Rules of Civil Procedure.

3.    <u>Legal Analysis</u>.  The Defendants initially argue that the Plaintiff's claims against the individual Defendants, under the Fourth Amendment, must be dismissed, because the Plaintiff makes no specific allegation of excessive force upon his person. See, <u>Defendants' Memorandum in Support</u>, <u>Docket No. 37</u>, at p. 7.  The Defendants additionally argue that Plaintiff's claims against the City must be dismissed because a municipality may not be held liable if there is no underlying constitutional injury to the Plaintiff that was inflicted by the individual officers.  <u>Id.</u>, citing <u>Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986)(holding that, if an officer has inflicted no constitutional injury on a plaintiff, it would inconceivable that a municipality could be liable to the plaintiff); <u>Shulz v. Long</u>, 44 F.3d 643, 650 (8th Cir. 1995)("[A] municipality may not be held liable on a failure to train theory unless an underlying Constitutional violation is located."); <u>Turner v. White</u>, 980 F.2d 1180, 1183 (8th Cir. 1992)(holding that, where a Jury found no violation of constitutional rights by an officer, there was no need to address the plaintiff's claims against supervisory defendants, and the municipality).

However, the Defendants provide no authority for the proposition that the only way in which the Plaintiff could state a claim, under the Fourth Amendment, is by alleging excessive force against his person.  Rather, as is well-established, in order to state a claim under Section 1983, the Plaintiff must allege a violation of a constitutional right that was committed by a person acting under color of State law. See, Title 42 U.S.C. §1983; Lesher v. Reed, 12 F.3d 148, 150 (8th Cir. 1994), citing Alexander v. Peffer, 993 F.2d 1348, 1349 (8th Cir. 1993).  The Defendants appear to have focused on the unavailability of municipal liability, while ignoring any analysis of the underlying allegations of constitutional violations that were assertedly committed by the individual Defendants.   Regardless of what appears as the Defendants' oversight, or inadvertence in briefing their Motion, we are tasked with analyzing this matter under the relevant case law, and the Record before us, whatever the parties' briefing may have been.

The gravamen of the Plaintiff's Amended Complaint is that the individual Defendants conducted a search of his residence without a proper Warrant, unconstitutionally seized and damaged his property and, in doing so, violated his First, Fourth, Fifth, Sixth and Fourteenth Amendment rights.  We address each claim in turn.

- 9 -

a.      The Plaintiff's First and Sixth Amendment Claims Against All Defendants. As to the Plaintiff's First and Sixth Amendment claims, he has made no allegation that his freedoms of speech, assembly, or religion, have been restricted in any way, or that he was denied a fair and speedy Trial that included access to legal counsel.  As a result, his claims under the First and Sixth Amendments have no merit, and we proceed to an analysis of the Plaintiff's Fourth, Fifth and Fourteenth Amendment claims.

b.      The Plaintiff's Claim of Unlawful Search Under the Fourth, and Fourteenth Amendments, Against the Individual Defendants. The Fourth Amendment protects [t]he right of the people to be secure in their persons * * * against unreasonable searches and seizures." U.S. Const. Am. IV; see also, Andrews v. City of West Branch, 454 F.3d 914, 918 (8th Cir. 2006), citing Graham v. Connor, 490 U.S. 386, 395 (1989).  The Fourth Amendment is applicable to State officials by virtue of the Due Process Clause of the Fourteenth Amendment.  See, Wolf v. Colorado, 338 U.S. 25, 27-28 (1949), overruled on other grounds by Mapp v. Ohio, 367 U.S. 643 (1961).

Accordingly, only those searches that are "unreasonable" are protected against encroachment.  See, United States v. Sharpe, 470 U.S. 675, 685 (1985)("The Fourth Amendment is not, of course, a guarantee against all search and seizures, but only

against unreasonable searches and seizures."); <u>Bell v. Wolfish</u>, 441 U.S. 520, 558 (1979); <u>United States v. Bach</u>, 310 F.3d 1063, 1067 (8th Cir. 2002), cert. denied, 538 U.S. 993 (2003).  In order to determine whether a search is reasonable, a Court must balance "the need for the particular search against the invasion of personal rights that the search entails." <u>Bell v. Wolfish</u>, supra at 559.  "A search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." <u>Dixon v. Lowery</u>, 302 F.3d 857, 862 (8th Cir. 2002), quoting <u>Michigan v. Tyler</u>, 436 U.S. 499, 506 (1978), quoting, in turn, <u>Camara v. Municipal Court of San Francisco</u>, 387 U.S. 523, 528-29 (1967).  A Search Warrant is valid if a neutral officer or magistrate makes a determination of probable cause, see, <u>United States v. Summage</u>, 481 F.3d 1075, 1077 (8th Cir. 2007), and, once a Warrant has been issued, the magistrate's determination of probable cause is afforded great deference. See, <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983)(holding that a reviewing Court need only find that the magistrate had a "substantial basis" to find probable cause); <u>United States v. Proell</u>, 485 F.3d 427, 430 (8th Cir. 2007).

The Plaintiff alleges that the individual Defendants unlawfully searched his residence, and seized property therein, and he suggests that those acts were conducted without showing anyone present at the time of the search a copy of the Warrant.  See, <u>Amended Complaint</u>, supra at ¶3.  We note that Rule 41(f)(1)(C), Federal Rules of

Criminal Procedure, provides that, after the execution of a Search Warrant, the

executing officer must provide a copy of that Warrant, and a receipt for the property

taken, to the person whose premises were searched, or leave a copy of the Warrant,

and a receipt, on the premises.   However, Rule 41(f) governs only Federal searches,

see, United States v. Spencer, 439 F.3d 905, 913 (8th Cir. 2006), and the Plaintiff has

not alleged that any Federal agent participated in the execution of the Search Warrant,

which was issued by a State Court Judge.[3]

More importantly, the Supreme Court has held that the failure to provide a copy

of a Search Warrant, at the outset of a search, does not violate either Rule 41(f), or the

Fourth Amendment.  See, United States v. Grubbs, 547 U.S. 90, --, 126 S.Ct. 1494,

1501 (2006); Groh v. Ramirez, 540 U.S. 551, 562 n. 5 (2004); see also, United States

v. Hepperle, 810 F.2d 836, 839 (8th Cir. 1987)(citing cases), cert. denied, 483 U.S.

1025 (1987).

---

[3]Even if Rule 41(f) did apply, the failure to abide by this Rule only allows the party whose residence was searched, and whose property was taken, to move to suppress that evidence in a subsequent criminal proceeding, see, United States v. Adams, 401 F.3d 886, 893 (8th Cir. 2005), cert. denied, 126 S. Ct. 492 (2005), and suppression is not necessary unless the defendant has been prejudiced, or can make a showing that the Rule was deliberately ignored.  See, United States v. Zacher, 465 F.3d 336, 339 (8th Cir. 2006); see also, United States v. Gantt, 194 F.3d 987, 1005 (9th Cir. 1999).  Those showings are not made here.

The Defendants have submitted evidence which shows that the individual Defendants conducted their search of the Plaintiff's residence, and their seizure of his possessions, pursuant to two (2) no-knock Warrants.  See, <u>Affidavit of Brown</u>, supra at ¶¶3-4, Exhibits A-B.  The common law provides that part of the "reasonableness" limitation of the Fourth Amendment is the requirement that police officers knock and announce their presence before entering.  See, <u>United States v. Coooper</u>, 168 F.3d 336, 339 (8th Cir. 1999), citing <u>Wilson v. Arkansas</u>, 514 U.S. 927, 930 (1995).  The Fourth Amendment does not forbid no-knock searches, but requires that the searching officers justify their failure to abide by the common law knock-and-announce requirement.  See, <u>Richards v. Wisconsin</u>, 520 U.S. 385, 391 (1997).  The police can justify a no-knock requirement by establishing that they had a reasonable suspicion that knocking would put the searching officers in danger, would be futile, or would otherwise hinder the investigation of the crime.  <u>Id.</u> at 394.

Even in drug cases, the Fourth Amendment requires that the police officers meet their burden, which is "not high," of showing that announcing their intent to search would jeopardize officer safety, or the integrity of the operation.  <u>Id.</u> at 394-95; see also, <u>United States v. Banks</u>, 540 U.S. 31, 35-36 (2003); <u>United States v. Moore</u>, 956 F.2d 843, 850 (8th Cir. 1992).  Here, the applications for the Warrants were accompanied by an Affidavit of police officer Nimlos, who stated that a nighttime

search was necessary as suspected drug activity had been observed in the evening hours, and that a no-knock entry was necessary as law enforcement anticipated the presence of known gang members who were expected to be armed.  See, <u>Affidavit of Brown</u>, supra at Exhibit A at p. 4; Exhibit B at p. 3.  Those Affidavits were duly reviewed and authorized by a Judicial Officer, <u>id.</u> Exhibit A p. 5; Exhibit B at p. 4, who granted the Search Warrants on that basis.  The Plaintiff has advanced no argument that Nimlos was untruthful in his Affidavit, or that the Court was misled into granting the application for a no-knock Warrant.

On this Record, we find that the Defendants acted in accord with the dictates of the Fourth Amendment, and that the search and seizure was reasonable under the circumstances.  See, <u>Muehler v. Mena</u>, 544 U.S. 93, 97-98 (2005)(rejecting plaintiff's claim that officers acted in contravention of the Fourth Amendment, and unreasonably destroyed property during a search); <u>Walker v. Bonenberger</u>, 438 F.3d 884, 890 (8th Cir. 2006)(police acted pursuant to a valid Warrant and the facts did not establish an unreasonable search).

Finally, we note that the Plaintiff alleges that the individual Defendants violated the Fourth Amendment when they arrested his son, Johntez Leondus Randle, without probable cause, or an Arrest Warrant, and used unnecessary force in the arrest of his sister-in-law, Noel Hudson.  See, <u>Amended Complaint</u>, supra at ¶¶10, 22.  However,

"Fourth Amendment rights are personal and may not be asserted vicariously." United States v. Brown, 484 F. Supp. 2d 985, 992 (8th Cir. 2007), quoting United States v. Gomez, 16 F.3d 254, 256 (8th Cir. 1994), citing in turn Rakas v. Illinois, 439 U.S. 128, 138-44 (1978). An arrest is a seizure of a person, and so must comport with the requirements established by the Fourth Amendment. See, Gerstein v. Pugh, 420 U.S. 103, 111 (1975). "[T]he product of a fourth amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damning evidence." Alderman v. United States, 394 U.S. 165, 171-72 (1969). As a result, the Plaintiff lacks standing to challenge the arrest of either his son, or his sister-in-law, and we find that dismissal of those claims, under the Fourth and Fourteenth Amendments, is proper.[4]

     c.     The Plaintiff's Claim of Excessive Force and Destruction of Property under the Fourth, Fifth, and Fourteenth Amendments Against the Individual

---

[4]"We use the term 'standing' as a shorthand reference to the issue of whether [the defendant's] Fourth Amendment interests were implicated by the challenged government actions," as "'[t]echnically, the concept of 'standing' has not had a place in Fourth Amendment jurisprudence * * * since the Supreme Court in Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), indicated that matters of standing in the context of searches and seizures actually involved substantive Fourth Amendment law.'" United States v. Green, 275 F.3d 694, 698 n. 3 (8th Cir. 2002), quoting United States v. Sanchez, 943 F.2d 110, 113 n. 1 (1st Cir. 1991). Stated with greater technical precision, the Plaintiff's privacy interests were not implicated in the seizure of either his son, or his sister-in-law.

Defendants.  The Plaintiff additionally argues that his rights under the Fourth, Fifth, and Fourteenth Amendments, were violated by the individual Defendants' employment of an "explosive device," or "flash bomb," to gain access to his residence, thereby damaging his property.  He further alleges that the officers unlawfully took $700.00 from his apartment without conducting a proper inventory.

The destruction of property, that is located inside a residence during a lawful search, is also subject to the Fourth Amendment's "reasonableness" standard, and any destruction, that was caused by the law enforcement officers, must be necessary to the effective execution of the Warrant.  See, Ginter v. Stallcup, 869 F.2d 384, 388 (8th Cir. 1989)(citing cases).  In addition, the unjustified destruction of personal property, during an otherwise constitutional search, constitutes a violation of due process.[5]  See, Ginter v. Stallcup, supra at 388 ("[T]he law prohibiting unnecessarily destructive behavior while searching a citizen's home was clearly established in 1983."); McMahon v. City of Dubuque, Iowa, 255 F.2d 154, 160 (8th Cir. 1958)("[F]ederal

---

[5]Although the Plaintiff brings his claims under both the Fifth and Fourteenth Amendments, there is no allegation that the Defendants were acting as Federal agents. "An action that violates the fourteenth amendment guarantee of equal protection when committed by a state actor violates the due process guarantee of the fifth amendment when committed by a federal actor." United States v. Greene, 995 F.2d 793, 795 (8th Cir. 1993), citing Johnson v. Robison, 415 U.S. 361, 364-65 n.4 (1974).  Thus, we examine the Plaintiff's claims under the Fourteenth Amendment, and recommend the dismissal of his Fifth Amendment claims.

courts will not permit the destruction of private property under the pretense of police power, and will not hesitate to condemn the erratic exercise thereof, resulting in depriving parties of constitutional rights * * *."), cert. denied, 358 U.S. 833 (1958). Although, on occasion, law enforcement officers will be permitted to damage property if it is necessary to perform their duty, see, Dalia v. United States, 441 U.S. 238, 258 (1979), "destruction of property that is not reasonably necessary to effectively execute a search warrant may violate the Fourth Amendment." Tarpley v. Green, 684 F.2d 1, 9  (D.C. Cir. 1982).

However, in Hudson v. Palmer, 468 U.S. 517, 533 (1984), the Supreme Court held that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available."  See also, Allen v. City of Kinloch, 763 F.2d 335, 336-37 (8th Cir. 1985), cert. denied, 474 U.S. 946 (1985)("[T]he Supreme Court has held that, where a random and unauthorized act by a state employee results in a tortious taking of private property, due process is satisfied if state tort law provides a meaningful post-deprivation remedy.").

Here, it appears that the Plaintiff did have an adequate post-deprivation remedy for the alleged loss of his personal property because, under Minnesota Statutes Section

466.02, municipalities are "subject to liability for its torts and those of its officers, employees and agents acting within the scope of their employment."  As a result, the Plaintiff could have sued the City of Minneapolis for the loss of his electronic goods, furnishings, and other items, as well as for the $700.00 that was allegedly taken from his apartment.[6]

The remedy provided by the State Statute constitutes an adequate post-deprivation remedy for the allegedly wrongful destruction and loss of the Plaintiff's property, and therefore, he cannot maintain a Federal civil rights action based on an alleged denial of Due Process.  See, Hubenthal v. County of Winona, 751 F.2d 243, 246 (8th Cir. 1984)(plaintiff's due process claim dismissed because Minnesota Statutes Section 466.02 provided him with an adequate post-deprivation remedy for alleged loss of property); see also, Kontos v. Wheeler, 1994 WL 319290 at *1 (8th Cir., July

_____

[6]To pursue this State remedy, a claimant must provide a formal notice of claim to the municipality, which satisfies the requirements of Minnesota Statutes Section 466.05, Subdivision I.  The Plaintiff cannot pursue this State remedy here, because he has not shown that he has met that statutory notice of claim requirement.  In his Amended Complaint, the Plaintiff does claim that he has contacted the Minneapolis Civilian Review Authority which, he alleges, has "two Investigators on two different cases involving The Minneapolis Police Department (3rd Precinct) because of the illegal corruption within that department."  See, Amended Complaint, Docket No. 7, at ¶24. However, the Civilian Review Authority is charged with investigating misconduct by the Police Department, and notice to that body does not satisfy the Statutory requirement that he make a demand directly to the City of Minneapolis for the loss of his property.

- 18 -

6, 1994)("[T]he gravamen of plaintiff's complaint is that he was deprived of property without due process of law," and "[i]t is fatal to this claim that Minnesota provides an adequate state post-deprivation remedy for loss of property.").

In sum, "[i]n challenging a property deprivation [under the Fourth Amendment or the Due Process Clause], the claimant must either avail himself of the remedies guaranteed by state law or prove that the available remedies are inadequate" and, having done neither, the Plaintiff's "'substantive and procedural due process claims are barred.'" Ali v. Ramsdell, 423 F.3d 810, 814 (8th Cir. 2005), quoting Hudson v. Palmer, supra at 539 (O'Connor, J., concurring); accord, Weimer v. Amen, 870 F.2d 1400, 1406 (8th Cir. 1989).[7]

        d.    The Plaintiff's Claims Against the City of Minneapolis.  Finally, we conclude that the Plaintiff's claims against the City of Minneapolis must be dismissed.  The Plaintiff has not presented any actionable Section 1983 claim against

_____

        [7]We acknowledge that we are somewhat troubled by the failure of the Defendants to explain the discrepancy between the scope of the Search Warrant for the downstairs unit of the duplex, in which the Plaintiff resided, and the inventory list that is attached to that Warrant, which states that it records items found in a search of the upper unit of the duplex.  However, as we discuss above, this is a concern that the Plaintiff could have raised in a civil suit under State law, or in any criminal proceeding in which the seized evidence was employed.  Since we are without jurisdiction to address a nonexistent civil suit against the City, for the recovery of damaged property, or any criminal proceedings involving the Plaintiff, we do not address the issue further.

the City, because he has not shown that the City of Minneapolis, itself, was responsible for any violation of his Federal constitutional rights.

It clearly appears that the Plaintiff is suing the City of Minneapolis based solely upon the alleged acts or omissions of the City's employees, specifically, the individual police officers who conducted the search of the Plaintiff's residence.  However, the doctrine of respondeat superior does not apply to Section 1983 claims, which means that a defendant cannot be held vicariously liable for the alleged constitutional misdeeds of an employee or subordinate.  See, Monell v. Dept. of Social Services, 436 U.S. 658, 694 (1978); Miller v. Compton, 122 F.3d 1094, 1100 (8th Cir. 1997).  Stated otherwise, "[a] municipality cannot be held liable solely under §1983 on a respondeat superior theory."  Kuha v. City of Minnetonka, 365 F.3d 590, 603 (8th Cir. 2004), quoting Monell v. Dept. of Social Services, supra at 691.

A municipality, such as the City of Minneapolis, can be liable under Section 1983 if a plaintiff can prove that the municipality has adopted some policy, custom, or practice, that caused a violation of the Plaintiff's Federal constitutional rights.  See, Lund v. Hennepin County, 427 F.3d 1123, 1125 (8th Cir. 2005); City of Canton v. Harris, 489 U.S. 378, 386-87 (1989); see also, Angarita v. St. Louis County, 981 F.2d 1537, 1546 (8th Cir. 1992)("A municipality may be held liable under Section 1983 only if a municipal custom or policy caused the deprivation of [a] right protected by

- 20 -

the constitution or federal laws."); <u>Williams v. Little Rock Municipal Water Works</u>, 21 F.3d 218, 223 (8th Cir. 1994)("[M]unicipal governments can be held liable for the acts of their employees in contravention of the civil rights of individuals only upon a showing that a 'policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers' is the motivating force behind the acts of those employees"), quoting <u>Monell v. Dept. of Social Services</u>, supra at 690.

Here, we have found that none of the Plaintiff's claims against the individual Defendants viably state a constitutional violation, so there is no basis for the Plaintiff to properly claim that he was injured by a custom, policy, or practice, of the City of Minneapolis as he failed to demonstrate a constitutional injury. "Municipalities cannot be held liable under §1983, however, 'unless action pursuant to official municipal policy or some nature caused a constitutional tort." <u>Kuha v. City of Minnetonka</u>, supra at 603, quoting <u>Monell v. Dept. of Social Services</u>, supra at 691. Here, no constitutional tort has been shown, and therefore, no <u>Monell</u> claim will lie.

Moreover, the Plaintiff has not made any specific allegations that his constitutional rights were violated because of some particular policy, custom or practice, as adopted by the City of Minneapolis. Rather, in his Amended Complaint, supra at ¶31, the Plaintiff alleges that "from what I've seen and experienced * * * it is the City of Minneapolis 'policy, custom or tradition' to deprive people who they

- 21 -

consider criminals of their legal rights, and it is poor training of the men and women who police the streets of Minneapolis, which is greatly * * * supported by their supervisors." The Plaintiff further alleges that police officers employed by the City of Minneapolis make a habit to conduct searches without a Warrant, and routinely take money found during such searches to "set[] up their own drug deals." Id. at ¶32.

Failure to properly train and supervise municipal employees can give rise to liability under Section 1983, but "'[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under [Section] 1983.'" Gatlin ex rel. Estate of Gatlin v. Green, 362 F.3d 1089, 1094 (8th Cir. 2004), quoting City of Canton v. Harris, supra at 389 (citations omitted). As explained by our Court of Appeals:

> A city * * * may be liable for deficient policies regarding hiring and training police officers where (1) the city's hiring and training practices are inadequate; (2) the city was deliberately indifferent to the rights of others in adopting them, such that the 'failure to train reflects a deliberate or conscious choice by a municipality,' * * * and (3) an alleged deficiency in the city's hiring or training procedures actually caused the plaintiff's injury. * * * It is necessary to show 'that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.' * * * In other words, the plaintiff

> must demonstrate that the city 'had notice that its
> procedures were inadequate and likely to result in a
> violation of constitutional rights.

Andrews v. Fowler, 98 F.3d 1069, 1076 (8th Cir. 1996)(citations omitted).

The Plaintiff cannot sustain his Section 1983 claim against the City of Minneapolis with just his vague and conclusory allegation that the City poorly trained its employees, and that those employee's actions was "greatly * * * supported by their supervisors."

To withstand the Defendant's Motion to Dismiss, or for Summary Judgment, the Plaintiff must show some specific deficiency in the City's training policy, which evidences a deliberate disregard for the constitutional rights of its citizens and visitors. See, Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993)("[M]ere assertion * * * that a municipality has a custom or policy [that purportedly caused a violation of the plaintiff's constitutional rights] is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference."). A failure to train the City's police officers cannot be inferred from just the single incident described in the Plaintiff's Amended Complaint. See, Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985)(an actionable policy or custom cannot be inferred from a single instance of unconstitutional activity). Therefore, the Plaintiff's Section 1983 claim against the City of Minneapolis cannot survive the City's Dispositive Motion. See, Williams v. Little Rock Municipal Water Works, supra at 223-24 (municipality

was entitled to summary judgment dismissal of plaintiff's Section 1983 claims where plaintiff presented no circumstantial or direct evidence of any custom or policy that violated plaintiff's constitutional rights, and therefore, "no reasonable factfinder would conclude that there was any [such] policy or custom.").

In sum, finding no viable constitutional violation of the Plaintiff's rights we recommend that the Defendants' Motion to Dismiss, or alternatively, for Summary Judgment, be granted in its entirety.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment [Docket No. 36], be granted.

Dated:  August 15, 2007                    s/Raymond L. Erickson
                                           Raymond L. Erickson
                                           CHIEF U.S. MAGISTRATE JUDGE

NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by

filing with the Clerk of Court, and by serving upon all parties **by no later than August 31, 2007,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than August 31, 2007,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.